# IN THE UNTED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH SMITH<br>775 Branch Court<br>Hazleton, PA 18201 : <br><br>Plaintiff, :<br><br>v. :<br><br>WEB.COM GROUP, INC.<br>*d/b/a* NETWORK SOLUTIONS, INC. :<br>10 Azalea Road<br>Drums, PA 18222<br><br>Defendant. : | CIVIL ACTION<br><br>No.:_____<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Sarah Smith (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.  Plaintiff has initiated this action to redress violations by Web.com Group, Inc. *d/b/a* Network Solutions, Inc. of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq.*)/the Pregnancy Discrimination Act ("PDA"), the American's with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII/Pregnancy Discrimination Act. Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII/Pregnancy Discrimination Act.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein under the ADA and Title VII/PDA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address set forth in the caption.

8. Defendant Web.com Group, Inc. *d/b/a* Network Solutions, Inc. (*hereinafter* "Defendant") is a corporation, located at the above-captioned address that provides domain name registration and web development services.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a female individual.

12. On or about October 30, 2017, Plaintiff was hired by Defendant as a business consultant/sales associate.

13. During her employment with Defendant, Plaintiff was primarily supervised by supervisors/team leaders Jeffrey Houser (*hereinafter* "Houser"), Adam Calarco (*hereinafter* "Calarco"), and Jessica Metrick (*hereinafter* "Metrick").

14. While employed with Defendant, Plaintiff was a dedicated and hard-working employee who performed her job well.

15. At all relevant times during Plaintiff's tenure with Defendant, she suffered from a serious health condition, Colitis. As a result, Plaintiff suffered from nervousness, abdominal pain and cramping, diarrhea, and uncontrollable bowel movements which (at times) required periodic bathroom visits and limited her ability to work – among other daily life activities.

16. Despite her aforementioned health conditions and limitations, Plaintiff was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

17. In or about April of 2018, Houser and Calarco called Plaintiff into a room and informed that they had pictures of her using the restroom to vape. Plaintiff responded that she had no idea what they were talking about. House and Calarco presented Plaintiff with pictures of her feet peeking out from a stall in the restroom, and informed her that she was using the restroom too often and for extended periods of time. Plaintiff was mortified and embarrassed by the pictures and the lack of privacy while she used the restroom.

18. Shortly thereafter, Plaintiff discovered that a new picture of her in a bathroom stall was being circulated by the maintenance men that worked in Defendant's building.

19. Plaintiff reached out to Jennifer Shoemaker (*hereinafter* "Shoemaker") in Defendant's Human Resources Department and informed her that both Houser and Defendant's maintenance employees had pictures of her using a bathroom stall and that it was embarrassing and an invasion of her privacy. Shortly thereafter, Shoemaker informed Plaintiff that the pictures would stop and "it was handled."

20. On or about June 15, 2018, Plaintiff was contacted by Defendant's Vice President, Alyssa Gouchie (*hereinafter* "Gouchie") who informed Plaintiff that she had been notified by Defendant's management that Plaintiff was taking too many extended bathroom breaks. Gouchie asked Plaintiff why she needed to use the bathroom so often. Plaintiff informed Gouchie that she had colitis which often required multiple and extended bathroom breaks if she was experiencing a "flare-up," and that she would be happy to provide Gouchie with a doctor's

note. Gouchie advised Plaintiff that she would need to provide a doctor's note within two (2) days.

21. On or about June 19, 2018, Plaintiff provided Gouchie and Defendant's Human Resources personnel, Kelly Bolchik (*hereinafter* "Bolchik") with a doctor's note stating that Plaintiff required an accommodation of restroom breaks as needed for her serious health condition.

22. Shortly after Plaintiff apprised Defendant's management and human resources department of her serious health conditions and the need for an accommodation of periodic restroom breaks for her aforementioned serious health condition, Defendant's management subjected Plaintiff to multiple forms of animosity and hostility. By way of example, but not intended to be an exhaustive list:

   a. Defendant's management, including but not limited to Houser, continued to monitor Plaintiff's bathroom usage closely, following her when she went to get a bottle of water from a vending machine and on several other occasions to see if she was going to the restroom and to note how long her restroom breaks lasted;

   b. Defendant's management informed Plaintiff that her medical paperwork was inadequate on numerous occasions, disparaging her need for restroom breaks and requiring that she detail exactly how many breaks she would need each day and precisely how long each break would last. Plaintiff was embarrassed and mortified by the questions, as they were unreasonable given the nature and unpredictability of her serious health condition;

c. Defendant's management informed Plaintiff that in order to accommodate her aforementioned health condition, they required ***all of her medical records***, even those that did not relate to her aforementioned serious health condition;

d. Defendant's management began to overly scrutinize her work and movements in the office; and

e. Defendant's management treated Plaintiff in a rude and demeaning manner.

23. Plaintiff's aforesaid mental health conditions were exacerbated by the hostile work environment and increased stress that she was subjected to by Defendant, which increased the need for additional bathroom breaks.

24. In or about July of 2018, Plaintiff informed Defendant's management, including her supervisor Metrick and Bolchik in Human Resources that she was pregnant. Plaintiff informed Bolchik that it would not interfere with her work.

25. In or about the middle of July, 2018, Plaintiff continued to meet her sales quotas, performed well, and received a commendation for having some of the highest sales during that period.

26. In or about the third week of July, 2018, Plaintiff was suspended by Houser and Defendant's Human Resources department for opening the restroom door and bumping an employee on the other side.

27. On or about August 2, 2018, Plaintiff was informed by Defendant's Human Resources Department that she was being terminated.

28. Defendant's aforesaid purported reason for terminating Plaintiff is completely pretextual because: (1) Plaintiff consistently worked hard for Defendant and performed her job well; (2) Plaintiff did not have a disciplinary history while working for Defendant, (3) Plaintiff's

bumping into another employee was completely accidental and could have happened to anyone; (4) Plaintiff was terminated shortly after informing Defendant of her serious health condition – Colitis, need for accommodation, and her pregnancy; and (6) Plaintiff was subjected to animosity and hostility after apprising Defendant of her serious health condition – Colitis, need for accommodations, and her pregnancy.

29. Plaintiff therefore believes and avers that she was terminated because (1) of her actual and known serious health condition; (2) her record of impairment; (3) her pregnancy; and (4) in retaliation for her requested accommodations.

## COUNT I
### Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment; and [3] Retaliation)

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. At all relevant times during Plaintiff's tenure with Defendant, she suffered from a serious health condition, colitis. As a result, Plaintiff suffered from nervousness, abdominal pain and cramping, diarrhea, and uncontrollable bowels movements which (at times) limited her ability to work – among other daily life activities.

32. Plaintiff kept Defendant's management informed of her serious health conditions.

33. Despite her aforementioned health conditions and limitations, Plaintiff was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

34. Plaintiff requested reasonable accommodations from Defendant in the form of bathroom breaks as needed for her serious health conditions.

35. Plaintiff was suspended and terminated shortly after informing Defendant of her serious health conditions and need for accommodations.

36. Plaintiff believes and avers that she was subjected to a hostile work environment because of: (1) her known and/or perceived health problems; (2) her record of impairment; and (3) and in retaliation for her requested accommodations through disparate treatment, and demeaning and/or discriminatory treatment toward her.

37. Therefore, Plaintiff believes and avers that she was suspended and ultimately terminated from Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; and (3) in retaliation for her requested accommodations.

38. This action as aforesaid constitutes unlawful discrimination under the ADA.

## COUNT II
## Violations of Title VII/PDA
### (Pregnancy Discrimination & Retaliation)

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. In or about July of 2018, Plaintiff informed her supervisor Metrick and Bolchik in Human Resources that she was pregnant. Plaintiff informed Bolchik that it would not interfere with her work.

41. In or about the third week of July, 2018, Plaintiff was suspended by Houser and Defendant's Human Resources department for opening the restroom door and bumping an employee on the other side.

42. On or about August 2, 2018, Plaintiff was informed by Defendant's Human Resources Department that she was being terminated.

43. Plaintiff was subjected to suspension and termination just a few weeks after she reported her pregnancy to Defendant's management and Human Resources Department.

44. Therefore, Plaintiff believes and avers that she was terminated from Defendant because of her pregnancy.

45. This action as aforesaid constitutes unlawful discrimination under the Title VII/PDA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, training, promotions, reinstatement and seniority.

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress, pain, suffering, and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Date: October 23, 2018